IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DOROTHY HANCOCK,<br><br>        Plaintiff,<br>  v.<br><br>OREGON HEALTH AND SCIENCE UNIVERSITY, WAYNE MONFIES, RUTH BEYER, JAMES A. CARLSON, DANNY JACOBS, CHAD PAULSON, STEVE ZIKA, STACY CHAMBERLAIN, PRASHANT DUBEY, and DOES 1 AND 2,<br><br>        Defendants. | Case No.: 3:22-cv-01254-AN<br><br>OPINION AND ORDER |

        Plaintiff Dorothy Hancock brings this action against defendants Wayne Monfies, Ruth Beyer, James A. Carlson, Danny Jacobs, Chad Paulson, Steve Zika, Stacy Chamberlain, Prashant Dubey, Does 1 and 2 (collectively, the "individual defendants"), and Oregon Health and Science University ("OHSU").  Plaintiff brings claims under 42 U.S.C. § 2000e-5 for employment religious discrimination (Count 1) and deprivation of plaintiff's First Amendment rights through 42 U.S.C. § 1983 (Count 2).  First Am. Compl., ECF [25], ¶¶ 17-30.  Plaintiff also seeks declaratory relief based on her allegation that the individual defendants violated the Free Exercise Clause of the First Amendment to the United States Constitution.  *Id.* ¶¶ 31-34.  On March 13, 2023, defendants filed a Motion to Dismiss, seeking dismissal of Count 2 and plaintiff's requested declaratory relief under Federal Rule of Civil Procedure 12(b)(6).  Oral argument was held on July 13, 2023.  Defendants filed a Notice of New Authority on October 23, 2023.  For the reasons set forth below, defendants' motion is GRANTED.

## LEGAL STANDARD

        A motion to dismiss for failure to state a claim is appropriate when the allegations within a complaint do not "state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

1

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).

When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). While the court must draw all reasonable inferences from the factual allegations in favor of the plaintiff, *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008), the court need not credit legal conclusions that are couched as factual allegations, *Ashcroft*, 556 U.S. at 678-79.

## BACKGROUND[1]

Plaintiff began working for OHSU as a lecturer on September 1, 2015. First Am. Compl. ¶ 10. In response to the COVID-19 pandemic, on August 4, 2021, Oregon Health Authority ("OHA") promulgated Oregon Administrative Rule 333-019-1010, which initially required that all "healthcare providers and healthcare staff" who work in a "healthcare setting" be either fully vaccinated against COVID-19 or submit to weekly COVID-19 tests. On August 25, 2021, OHA amended the rule to prohibit healthcare provider employers from employing any person working in a healthcare setting unless that person was fully vaccinated against COVID-19 or had a documented medical or religious exception. Or.

---

[1] Plaintiff includes additional facts, not alleged in her complaint, in her response to defendants' motion to dismiss. These allegations are included in the background and the Court's analysis only to the extent they present undisputed matters of public record. *See Coto Settlement v. Esienberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (noting that court may consider "material incorporated into the complaint or matters of public record" when deciding motion to dismiss); *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (Emphasis in original.)).

Admin. R. 333-019-1010. The rule required corroboration of a religious exception and defined permissible documentation as:

> "a document, on a form prescribed by the [OHA], signed by the individual stating that the individual is requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief and including a statement describing the way in which the vaccination requirement conflicts with the religious observance, practice, or belief of the individual."

*Id.* 333-019-1010(4)(b)(B). On September 1, 2021, OHA amended the rule to permit the use of "a similar form that contains all of the information required in the OHA form." *Id.*

In September of 2021, OHSU announced that all OHSU employees would be required to receive the COVID-19 vaccination by late October of 2021. First Am. Compl. ¶ 11. Exceptions were available under the OHSU policy for employees with sincerely held religious beliefs or medical circumstances that prevented the employee from receiving the vaccine. *Id.* Plaintiff alleges that the individual defendants, other than the Doe defendants, are members of OHSU's Board of Directors and were responsible for establishing OHSU's institutional strategy and policy regarding accommodations for the COVID-19 vaccination mandate, including OHSU's Vaccine Exception Review Panel and Vaccine Exception Review Committee ("VERC"). *Id.* ¶ 7.

On September 8, 2021, plaintiff notified OHSU of her sincerely held religious beliefs preventing her from receiving the COVID-19 vaccination. *Id.* ¶ 12. OHSU asked plaintiff to provide additional information about her religious beliefs, which plaintiff submitted. *Id.* ¶ 13.

On October 1, 2021, OHSU notified plaintiff that it had not approved plaintiff for a "religious exception" to the vaccine requirement. *Id.* ¶ 14. Plaintiff alleges that the Doe defendants are VERC members who evaluated plaintiff's religious accommodation request and were directly responsible for denying her request. *Id.* ¶ 8. On October 11, 2021, OHSU notified plaintiff that she would be placed on unpaid leave, effective October 19, 2021, and if plaintiff did not receive a COVID-19 vaccination by December 2, 2021, she would be "deemed to have resigned." *Id.* ¶ 15.

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission on February 22, 2022. *Id.* ¶ 16. Plaintiff received notice of her right to sue on March 10,

2022. *Id.* Plaintiff filed the present lawsuit on June 7, 2022 in Union County Circuit Court. Notice of Removal, ECF [1], Ex. A. Defendants were served on July 27, 2022, and removed the action to this Court on August 24, 2022. *Id.* at 1-4. Plaintiff filed her First Amended Complaint on February 27, 2023, and defendants moved to dismiss on March 13, 2023.

## DISCUSSION

### A.   First Amendment Violation Under 42 U.S.C. § 1983

Count 2 of plaintiff's complaint alleges the following wrongful conduct:

"Acting under color of state law[,] the Board Defendants and Does 1 and 2 expressed overt hostility to the religious beliefs of Plaintiff by declaring Plaintiff's religious beliefs 'personal moral choices and/or conscientious objection rather than a tenet of a religious faith,' merely her 'right to have religious freedom or conscientiously object to the vaccine' rather than a sincerely held religious belief and 'concerns over vaccine safety or content' not a sincerely held religious belief but rather a 'religious argument' and 'inconsistent with proven facts.'"

*Id.* ¶ 29. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the conduct complained of deprived her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants argue that Count 2 fails to state a claim for relief for four reasons: (1) plaintiff lacks Article III standing; (2) plaintiff has not alleged a substantial burden on her freedom to practice religion; (3) defendants are entitled to qualified immunity; and (4) plaintiff alleges only vicarious liability. These arguments are addressed in turn.

#### 1.   *Article III Standing*

To maintain an action in federal court, a plaintiff must establish standing under Article III of the United States Constitution. U.S. Const. art. 3. To establish standing, a plaintiff must demonstrate that (1) they have suffered an "injury in fact" that is concrete and particularized or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision by the court. *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008). Defendants argue that plaintiff has failed to establish an injury in fact, noting that plaintiff's only allegation against the individual defendants is that they "expressed overt hostility" to her religious

4

beliefs. First Am. Compl. ¶ 29. Though plaintiff's complaint alleges that she was terminated due to OHSU's conduct, incurring economic damages, defendants highlight that she does not make a similar allegation against the individual defendants. Thus, defendants argue that expressing hostility is neither a "concrete" injury nor a plausible invasion of plaintiff's "legally protected interest." Defs.' Mot. 4 (citing *Alaska Right to Life PAC v. Feldman*, 504 F.3d 840, 848-49 (9th Cir. 2007)).

Plaintiff argues that she has a "legally protected interest in not having her state agency employer declare her sincerely held religious beliefs merely her personal opinions in the context of a religious accommodation process." Pl.'s Resp. to Defs.' Mot. to Dismiss, ECF [30], at 9. She contends that her injury derives from OHSU's vaccine mandate, and that defendants were using the religious exception process to "embarrass and shame Plaintiff" and "to convince Plaintiff she did not hold the beliefs she professed." *Id.*

Four cases have recently been filed in this district against OHSU by former employees related to OHSU's vaccine mandate, one of which is closely analogous to the present case. In *Maggio v. Oregon Health & Science University*, Magistrate Judge Julie Russo recommended that the defendants' motion to dismiss the plaintiff's § 1983 claim against the individual defendants be granted because "mere 'hostility' towards plaintiff's religious beliefs in the form of a vaccine mandate, without more, neither constitutes a concrete injury nor plausibly invades plaintiff's legally protected interests." No. 3:23-cv-00116-JR, 2023 WL 6148938, at *4 (D. Or. June 1, 2023) (citing *Alaska Right to Life*, 504 F.3d at 848-49), *adopted by* 2023 WL 6147196 (D. Or. Sept. 20, 2023).

The plaintiff's allegation in *Maggio* related to their § 1983 claim was substantially similar to the allegation that the plaintiff in this case makes. *Compare id.* at *4 ("Plaintiff alleges 'the Board Defendants and Does 1 and 2 expressed overt hostility to [her] religious beliefs[.]'") *with* First Am. Compl. ¶ 29 (" . . . Board Defendants and Does 1 and 2 expressed overt hostility to the religious beliefs of Plaintiff[.]"). The Court agrees with Judge Russo's well-reasoned opinion: "[W]ithout an expression of tangible harm, plaintiff's allegations are unlikely to be redressable by a favorable ruling." *Maggio*, 2023 WL 6148938, at *4. As alleged, plaintiff's complaint is inadequate to establish standing for her § 1983

5

claim against the individual defendants because "hostility" is neither a concrete injury, nor a plausible invasion of plaintiff's legally protected interests.

2. *Substantial Burden*

Even if plaintiff established Article III standing, the complaint fails to establish that the individual defendants deprived plaintiff of her right to the free exercise of religion. The free exercise clause protects both "the freedom to believe and the freedom to act." *N. Valley Baptist Church v. McMahon*, 696 F. Supp. 518, 524 (E.D. Cal. 1988), *aff'd*, 893 F.2d 1139 (9th Cir. 1990). To demonstrate a violation of the First Amendment right to free exercise of religion, a plaintiff must show that "the government action in question substantially burdens [her] practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). A substantial burden is "'more than an inconvenience on religious exercise'; it must have a 'tendency to coerce individuals into acting contrary to their religious beliefs' or 'exert [ ] substantial pressure on an adherent to modify [her] behavior and to violate [her] beliefs.'" *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (first alteration in original, second and third alterations added) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006)).

Defendants argue that plaintiff's allegations do not establish that the individual defendants substantially burdened plaintiff's religious practices or beliefs. Defendants highlight that plaintiff does not allege that the individual defendants pressured plaintiff to modify her behavior or to violate her beliefs. Plaintiff argues that, by requiring her to fill out the form and declaring that plaintiff's beliefs were not religious beliefs, the defendants "engaged in conduct having a tendency to coerce Plaintiff into acting contrary to her religious beliefs." Pl.'s Resp. 10 (citing *Guru Nanak Sikh Soc'y*, 456 F.3d at 988).

However, as highlighted by defendants, these allegations are not clearly illustrated in the complaint. At best, the Court identifies only two allegations that could plausibly be related to coercion: (1) "Defendant OHSU's request for additional information was meant to belittle and shame Plaintiff for her religious beliefs and convince her she did not possess the religious beliefs she possessed"; and (2) "Board Defendant's [*sic*] placed pressure on Plaintiff to conform to the prevailing approved religion by proclaiming which religious beliefs were worthy of religious exceptions and which were not." First Am. Compl. ¶¶ 13,

6

34. Putting aside the fact that the first allegation is aimed at OHSU, not the individual defendants, neither allegation addresses what effect this alleged pressure had on plaintiff. That is, plaintiff does not allege that she actually *felt* pressured to modify her behavior or violate her beliefs, nor does she allege how this pressure burdened her religious practice or beliefs. On the contrary, she states, "Notwithstanding that, Plaintiff filled out Defendant OHSU's additional religious questionnaire." *Id.*

Further, plaintiff fails to provide any precedent supporting the proposition that a medical exception process would "have a tendency to coerce individuals into acting contrary to their religious beliefs." *Guru Nanak Sikh Soc'y*, 456 F.3d at 988. Indeed, the parties identify two cases in which courts have upheld the constitutionality of employer inquiries into the sincerity of an employee's stated religious beliefs. *See Ferrelli v. Unified Ct. Sys.*, No. 1:22-CV-0068 (LEK/CFH), 2022 WL 673863, at *8 (N.D.N.Y. Mar. 7, 2022) ("[C]ourts have made clear that the state is permitted to assess whether a belief is sincerely held and religious in nature."); *Bushouse v. Local Union 2209*, 164 F. Supp. 2d 1066, 1075 (N.D. Ind. Oct. 2, 2001) ("[A]t least in some contexts, . . . it is appropriate to examine or inquire into the sincerity of an individual's belief and whether the belief is, in fact religious, before permitting special accommodation to be made based upon that belief."). Based on the allegations in the complaint, plaintiff has not demonstrated that her free exercise of religion was substantially burdened.

3. *Qualified Immunity*

Government officials are entitled to qualified immunity if the law governing the official's conduct was not clearly established. *Thompson v. Souza*, 111 F.3d 694, 698 (9th Cir. 1997). However, even if the law governing the official's conduct was clearly established, qualified immunity may still apply if a reasonable official could have believed his conduct was lawful. *Id.* The doctrine is designed to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). If applicable, qualified immunity provides immunity against liability, as well as immunity from suit and other litigation burdens. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, qualified immunity is designed to dismiss "insubstantial claims" against government officials before the discovery phase, *Anderson v. Creighton*, 483 U.S. 635, 640 n.2

(1987). Qualified immunity questions should, therefore, be resolved at the earliest possible stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A constitutional right is clearly established when "its contours [are] [ ] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Generally, an official is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 746; *see Malley v. Briggs*, 475 U.S. 335, 341 (1986) (noting that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Notably, the inquiry is whether the defendant's "specific conduct" violated clearly established law, meaning the precedent must involve, at the least, "closely analogous" conduct. *Sharp v. Cnty. of Orange*, 871 F.3d 901, 909, 912 (9th Cir. 2017).

Based on plaintiff's allegations in the complaint, the question is whether clearly established law existed, at the time that plaintiff's religious exception was denied, affirming that an employer's inquiry and assessment of the sincerity of an employee's religious beliefs in relation to a religious exception for a vaccine mandate violates that employee's free exercise of religion.[2] Although defendants deny violating plaintiff's rights, they argue that, even if the individual defendants' conduct was unconstitutional, there is no clearly established law on the issue. Defendants argue that, to the contrary, precedent actually requires public employers to determine whether an employee requesting a religious exemption has an objection that is "religious" in nature, rather than personal, moral, or otherwise secular. Defs.' Resp. 7-8 (citing *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 713 (1981); *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681-82 (9th Cir. 1998)). Defendants highlight cases in which secular objections have been identified as those based on monetary concerns, safety concerns, or purely personal opinions of right and wrong. *Id.* at 8 (citing *Tiano*, 139 F.3d at 682; *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017); *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, No. 21-cv-04024, 2021 WL 4399672, at *8 (E.D. Pa. Sept. 27, 2021)). Based on this precedent, defendants argue that in evaluating whether plaintiff's religious

---

[2] Though plaintiff also frames the inquiry in her response as whether a state agency may "categorically declare certain beliefs not religious in nature," this basis is not alleged in the complaint. Pl.'s Resp. 11.

8

objection was sincerely religious, or rather a personal moral choice or conscientious objection, the individual defendants applied settled law in an objectively reasonable manner and are entitled to qualified immunity.

Plaintiff argues that neither *Tiano* nor *Fallon* stand for the proposition that employers have a clearly established right to "put employees through an 'exception' process meant to belittle and shame them for their professed beliefs." Pl.'s Resp. 11. On the contrary, plaintiff argues that longstanding precedent dictates that the government may "reach actions only and not opinions." *Id.* at 12.

At the outset, plaintiff has presented no evidence that clearly established law existed, at the time of defendants' alleged conduct, prohibiting employers from inquiring into the sincerity of an employee's religious beliefs. That is, while plaintiff provides a general argument that the law prohibits government assessment of opinions, the only cases that plaintiff cites are *Reynolds v. United States*, 98 U.S. 145 (1878) and *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022). However, neither *Reynolds* nor *Kennedy* addressed an issue stemming from the government's assessment of the sincerity of an individual's religious beliefs. *See Reynolds*, 98 U.S. at 165-67 (examining constitutionality of statute criminalizing polygamy in the context of religions incorporating polygamy); *Kennedy*, 597 U.S. at 525 ("No one questions that [plaintiff] seeks to engage in a sincerely motivated religious exercise."); *see also Macdonald v. Or. Health & Sci. Univ.*, No. 3:22-cv-01942-IM, 2023 WL 5529959, at *10 (D. Or. Aug. 28, 2023) (noting that plaintiff's cited caselaw "clearly establish[ed] the right to free exercise of religion," but did not "deal with the particular context in which Plaintiff's claim arose"). Put simply, plaintiff has provided no precedent implying that clearly established law prohibited employers from inquiring into the sincerity of an employee's beliefs in the context of a vaccine mandate during a global pandemic.

To be sure, conduct may violate established law, even in novel factual circumstances, in obvious or egregious cases. *See United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[I]n [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful[.]"); *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (concluding that "particularly egregious facts of [the

9

case]" meant a reasonable officer would have known of constitutional violation).  However, plaintiff's allegations do not present an obvious or egregious case.  Indeed, as U.S. District Judge Karin Immergut aptly stated, "[G]overning case law clearly held that to be entitled to constitutional protection, religious beliefs must be both 'sincerely held,' and 'rooted in religious belief' rather than 'purely secular philosophical concerns.'" *MacDonald*, 2023 WL 5529959, at *10 (quoting *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981)).  Given the relevant caselaw supporting an employer's right to inquire as to the sincerity and basis of an employee's beliefs, the Court cannot say that defendants' conduct was unreasonable.

Accordingly, plaintiff has not met her burden of demonstrating that clearly established law existed, at the time of defendants' alleged conduct, affirming that defendants' conduct was unconstitutional.[3]

**B.    Declaratory Relief**

Defendants also move to dismiss plaintiff's declaratory relief claim, arguing that it seeks only retrospective relief and is thus barred by the Eleventh Amendment.  Defendants argue that the allegations in the complaint pertain only to past conduct, specifically allegations that the Board defendants "expressed overt hostility to religious belief" and that the Doe defendants "violated the Free Exercise Clause."  First Am. Compl. ¶ 33.  Because plaintiff no longer works at OHSU, and because the complaint does not allege that the policy still exists, is still applied, or that plaintiff's rights are still being violated, defendants argue declaratory relief is prohibited

Plaintiff argues that the declaratory relief is prospective because she is asking the court to "prospectively declare the Board Defendants may not enact a policy proclaiming which beliefs are worthy of First Amendment protection and which are not."  Pl.'s Resp. 12.  Plaintiff acknowledges that the complaint does not allege that unlawful conduct is still continuing at OHSU, but argues that she seeks declaratory relief "so other OHSU employees with religious beliefs do not have to experience what Plaintiff experienced." *Id.*

Plaintiff's arguments do not remedy the central issue with this claim: "[A] declaratory

---

[3] Because the Court finds the qualified immunity issue dispositive, it declines to address defendants' vicarious liability argument.

judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017).  Plaintiff does not deny that she, herself, is not experiencing a continuing violation of her constitutional rights.  Although plaintiff alleges in her response that other OHSU employees may be experiencing such violations, no such allegation appears in the complaint.  And even if that allegation existed in the complaint, defendants correctly point out that "one may not claim standing . . . to vindicate the constitutional rights of some third party."  *Singleton v. Wulff*, 428 U.S. 106, 114 (1976).  Though there are some exceptions to this general rule, plaintiff identifies none of them as applicable.

Plaintiff's declaratory relief claim, as alleged in the complaint, is insufficient to state a claim for relief.  However, given the dearth of factual allegations in the complaint related to third-party standing, the Court cannot say that plaintiff's declaratory relief claim is incurable as a matter of law.  Therefore, leave to amend is appropriate.

## CONCLUSION

Accordingly, defendants' Motion to Dismiss, ECF [27], is GRANTED.  Count 2 and Count 3 of the complaint are DISMISSED without prejudice.  Plaintiff may file a second amended complaint within fourteen days of this Opinion & Order, if she believes she can remedy the deficiencies outlined in this Opinion and Order.

IT IS SO ORDERED.

DATED this 8 day of February, 2024.

*Adrienne Nelson*
Adrienne Nelson
United States District Judge